UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL LEE HARRELL,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, acting Commissioner of Social Security,<br><br>Defendant. | No. 1:20-cv-00614-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**<br><br>**(Doc. 30)** |

I. **Introduction**

Plaintiff Daniel Lee Harrell ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 30–32. After reviewing the record the Court finds that substantial evidence and applicable law do not support the ALJ's decision. Plaintiff's appeal is therefore granted.

II. **Procedural Background**[2]

On November 21, 2016 Plaintiff applied for benefits alleging disability as of October 1, 2015 due to high blood pressure, anxiety and depression. AR 189. The Commissioner denied the applications initially on April 14, 2017 and on reconsideration on June 1, 2017. AR 92, 119.

Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on December 27, 2018. AR 28–60. On May 28, 2019 the ALJ issued a decision denying

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 10 and 13.
[2] The Court has reviewed the administrative record including the medical, opinion and testimonial evidence, about which the parties are well familiar. Relevant portions thereof will be referenced in the course of the analysis below when relevant to the arguments raised by the parties.

1

Plaintiff's application. AR 10–18. The Appeals Council denied review on February 26, 2020. AR 1–6. On April 29, 2020 Plaintiff filed a complaint in this Court. Doc. 1.

### III.   The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a

sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy, given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.    The ALJ's Decision**

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of October 1, 2015. AR 12. At step two the ALJ found that Plaintiff had the following severe impairments: panic disorder, agoraphobia and depression. AR 12. The ALJ also determined at step two that Plaintiff had the following non-severe impairments: obesity and alcohol abuse. AR 12–13.

At step three the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 13–14. Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform a range of light work with various physical restrictions that are not at issue here, as well as the following mental restrictions: a limitation to simple routine tasks with limited public contact. AR 14. At step four the ALJ found that Plaintiff had no past relevant work. AR 14. At step five, based on the VE's testimony, the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: garment sorter, electronics worker, and small products

assembler. AR 17. Accordingly, the ALJ found that Plaintiff was not disabled since his alleged onset date of October 1, 2015. AR 17.

### V. Issues Presented

Plaintiff contends that the ALJ erred in failing to incorporate the limitations identified by the consultative psychiatric examiner, Dr. Stafford, and in rejecting the lay witness statement of his friend, Tami Ashley. Br. at 1, Doc. 30.

#### A. Dr. Stafford's Opinion

##### 1. Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical

and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

An ALJ may reject an uncontradicted opinion of a treating or examining physician only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining physician may be rejected for "specific and legitimate" reasons. *Id.* at 830. In either case, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Regardless of source, all medical opinions that are not given controlling weight are evaluated using the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization. 20 C.F.R. § 404.1527(c). The opinion of a non-examining physician (such as a state agency physician) may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)

### 2. **Analysis**

In addition to several mild limitations which are not at issue, Dr. Stafford opined that Plaintiff had moderate limitations in the following areas: social interaction (including the ability to interact with co-workers, supervisors and the general public), maintaining regular attendance, completing a normal workday without interruptions, and handling work related stressors. AR 371–372.

The ALJ assigned this opinion "great weight" because Dr. Stafford had the opportunity to physically examine the claimant, his opinion was supported by his objective findings on examination, and because his opinion was consistent with the objective medical record. AR 16.

Plaintiff contends that despite the ALJ purporting to assign Dr. Stafford's opinion "great weight," the ALJ implicitly rejected Dr. Stafford's opinion as the RFC only reflects a restriction to simple/routine tasks with limited public contact, whereas Dr. Stafford identified additional restrictions which the ALJ omitted without explanation. Br. at 7–8.

In response, Defendant raises three alternative arguments: 1) the RFC was independently supported by substantial evidence irrespective of Dr. Stafford's opinion; 2) the ALJ did in fact reasonably account for all of the limitations identified by Dr. Stafford despite not transcribing each one in the RFC; and 3) to the extent the ALJ improperly omitted Dr. Stafford's identified limitations in social interaction, the error was harmless because the unskilled jobs identified by the VE do not require social interaction. Resp. at 6–9, Doc. 31.

Defendant contends the RFC was independently supported because: 1) Plaintiff's mental status examination findings were consistently mild; 2) his affect was within normal limits notwithstanding anxiety; 3) his anxiety was responsive to medication; 4) Plaintiff's mental health conditions were managed conservatively; and 5) by 2018 Plaintiff reported no additional panic attacks, that he was happy with his medication, and his agoraphobia and anxiety were stable. Resp. at 6 (citing AR 15, 265, 317–18, 322–24, 328–29, 331, 334, 337, 340, 345, 356, 360, 364, 369–71). Defendant contends the RFC was further supported by the opinions of the non-examining state agency physicians who opined Plaintiff could perform simple repetitive work with limited public contact. AR 72–73, 102 –103.

Existing caselaw supports the notion that an ALJ need not necessarily perform a "function-by-function analysis," nor address each work-related restriction identified in the record "so long as the RFC is otherwise supported by substantial evidence." *See Diakogiannis v. Astrue*, 975 F. Supp. 2d 299, 313 (W.D.N.Y. 2013). In such instances, a function-by-function analysis is superfluous. *Id.* As noted below, the ALJ did arguably identify sufficient reasoning and medical records in

support of his broader conclusion that Plaintiff's agoraphobia and panic attacks were sufficiently controlled by his medication regimen, and that those conditions therefore did not pose work related limitations beyond a limitation to simple/routine tasks with limited public contact.

Paradoxically, however, the ALJ accorded great weight to Dr. Stafford's opinion which identified moderate limitations beyond those incorporated by the ALJ. The ALJ's ultimate intention may have been to only accord Dr. Stafford's opinion partial weight and to reject the portion of the opinion that identified restrictions inconsistent with the ALJ's articulated RFC. However, the Court must take the ALJ's opinion as written. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

The ALJ was under no obligation to accept a medical opinion he found unsupported by the record. But, having clearly stated that he was according Dr. Stafford's opinion great weight, the ALJ was under an obligation to account for the moderate limitations Dr. Stafford identified irrespective of the broader reasoning in support of the RFC. *See Wascovich v. Saul*, 2:18-CV-659-EFB, 2019 WL 4572084, at *4 (E.D. Cal. Sept. 20, 2019) (citing *Betts v. Colvin*, 531 F. App'x 799, 800 (9th Cir. 2013) ("where the ALJ accepts the medical assessment of moderate limitations, those limitations must be accounted for in the RFC."). "This does not necessarily mean that the ALJ was required to explicitly transcribe the limitation in the RFC. Rather, he is required to account for it in his 'translation.'" *Wascovich*, 2019 WL 4572084 at *5; *Rounds v. Commissioner of Social Security Administration*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

The question therefore is whether the RFC, or the ALJ's alternative hypotheticals to the

VE,[3] accurately captured all limitations supported by the record, including the limitations identified in Dr. Stafford's opinion. If not, the ALJ's step five conclusion that Plaintiff could perform jobs existing in significant numbers in the national economy was unsupported. *See Alexander v. Saul*, 817 F. App'x 401, 404 (9th Cir. 2020) ("If the hypothetical does not reflect all the claimant's limitations, . . . the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.").

First, as to Dr. Stafford's opinion that Plaintiff was moderately limited in his ability to handle work related stressors, Defendant cites two cases from this district holding that such a limitation is properly accounted for where the RFC restricts Plaintiff to simple/routine tasks, as the ALJ did here. Resp. at 8 (citing *Henry v. Colvin*, No. 1:15-cv-00100-JLT, 2016 WL 164956, at *18 (E.D. Cal. Jan. 14, 2016) (simple tasks encompasses low stress tolerance); *Keller v. Colvin*, No. 2:13-cv-0221-CKD, 2014 WL 130493, at *3 (E.D. Cal. Jan. 13, 2014) (simple, repetitive tasks "appropriately captured" physician's opinion that claimant required "low stress settings")).

Second, Defendant cites caselaw holding that a limitation to simple/routine tasks accounts for social interaction limitations. Resp. at 9 (citing *See Messerli v. Berryhill*, 2017 WL 3782986, at *11 (E.D. Cal. Aug. 31, 2017), *Rogers v. Comm'r of Soc. Sec. Admin.*, 490 F. App'x 15 (9th Cir. 2012) (holding that an RFC for simple routine tasks, which did not expressly note the claimant's moderate limitations in interacting with others, nonetheless adequately accounted for such limitations); *Henry*, 2016 WL 164956, at *18 (simple tasks accounted for moderate social interaction limitations); *Langford v. Astrue*, No. 07-cv-0366-EFB, 2008 WL 2073951, at *7 (E.D. Cal. May 14, 2008) (same).

---

[3] The ALJ's hypotheticals included only various physical restrictions which are not at issue, a restriction to simple/routine tasks, and that the individual would be unable to complete an eight-hour work day. The VE testified that the latter restriction would be work preclusive. The ALJ did not address the remaining moderate limitations identified by Dr. Stafford in his hypotheticals to the VE. AR 51–55.

Finally, as to Dr. Stafford's opinion that Plaintiff was moderately limited in his ability to complete a normal workday without interruptions from a psychiatric condition and to maintain regular attendance, Defendant cites case law holding that such limitations are not work prelusive and are reasonably accounted for where the RFC limits a claimant to simple and repetitive tasks, as the ALJ did here. Resp. at 8 (citing *Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007); *Rodriguez v. Colvin*, No. 1:13-cv-01716-SKO, 2015 WL 1237302, at *6 (E.D. Cal. Mar. 17, 2015).

Notably, however, *Hoopai* and *Stubbs* are the only controlling precedent Defendant cites on any of these issues and neither is outcome determinative here. Defendant cites *Hoopai* for proposition that moderate limitations are not necessarily work preclusive. That does not resolve the inquiry, however. The question is whether the ALJ, having accepted Dr. Stafford's opinion, appropriately translated the moderate limitations from that opinion into concrete restrictions in the RFC. *See Martin v. Comm'r of Soc. Sec. Admin.*, 472 Fed. App'x 580 (9th Cir. 2012) (unpublished) ("The administrative law judge (ALJ) erred when formulating Martin's residual functional capacity (RFC) because the RFC neither incorporated Dr. Steiner's opinion of Martin's work limitations nor gave specific and legitimate reasons for rejecting it.").

Defendant also relies on *Stubbs*, in which Ninth Circuit held that an ALJ appropriately translated "pace and the other mental limitations regarding attention, concentration, and adaption" into "the only concrete restrictions available to him," namely a limitation to simple tasks. *See Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). *Stubbs* did not specifically address the extent to which a limitation to simple and routine tasks appropriately accounts for the limitations identified by Dr. Stafford here. The physicians' opinions at issue in *Stubbs* were distinct from the opinion at issue here. The court's discussion in *Stubbs* reveals only that the physicians opined on the claimant's mental functioning in the areas of pace, attention, concentration and adaptation. As such, there is no basis to extend the holding of *Stubbs* to the specific restrictions

Dr. Stafford identified here.

Here, by contrast, Dr. Stafford identified comparatively more concrete restrictions, namely interaction with supervisors, peers and the public, ability to handle the usual stressors encountered in the workplace, to maintain regular attendance, and complete a normal workday without interruption from psychiatric conditions. *Stubbs* is therefore inapposite, as other courts have held under similar circumstances. *See, e.g.*, *Ferguson v. Comm'r of Soc. Sec.*, No. 1:18-CV-01585-EPG, 2019 WL 6341034, at *6 (E.D. Cal. Nov. 27, 2019) ("Moreover, even under the Stubbs-Danielson analysis, the ALJ's RFC fails to account for specific concrete work restrictions given by the doctors, including 'The claimant has a fair ability to accept instructions from supervisors and interact with co-workers and the public,' 'The claimant is not able to perform work activities on a consistent basis without special or additional instruction,' and 'The claimant is not able to deal with the usual stress encountered in a competitive work place.' *These are concrete restrictions, not statements about mental function generally*.'") (emphasis added); *see also Brink v. Comm'r Soc. Sec. Admin.*, 343 F. App'x 211, 212 (9th Cir. 2009) ("The medical testimony in Stubbs–Danielson, however, did not establish any limitations in concentration, persistence, or pace. Here, in contrast, the medical evidence establishes, as the ALJ accepted, that Brink does have difficulties with concentration, persistence, or pace. Stubbs–Danielson, therefore, is inapposite.").

As for the unpublished district court case law (which is not controlling, but is more factually on point) it is split but tends to favor the view that a restriction to simple/routine tasks with limited public contact does not account for the moderate limitations Dr. Stafford identified in interacting with supervisors and peers, handling work related stressors, maintaining regular attendance, and completing a normal workweek without interruption. *See Macias v. Saul*, No. 1:19-CV-01187-BAM, 2021 WL 856423, at *6 (E.D. Cal. Mar. 8, 2021) (collecting cases, and holding that a limitation to simple/routine tasks does not account for attendance limitations); (*Wascovich*, 2019

10

WL 4572084 at *5 (E.D. Cal. Sept. 20, 2019) (same); *Berenisia Madrigal v. Saul*, No. 1:18-CV-01129-SKO, 2020 WL 58289, at *2 (E.D. Cal. Jan. 6, 2020) (restriction to simple/routine tasks does not account for mild to moderate limitations in ability to complete a normal workday or workweek without interruptions from a psychiatric condition and the ability to deal with stress and changes encountered in the workplace); *Donna M. v. Saul*, No. 19-CV-03134-DMR, 2020 WL 6415601, at *4 (N.D. Cal. Nov. 2, 2020) (noting limitation to simple, routine tasks with no public interaction in RFC failed to address other moderate limitations, such as plaintiff's ability to relate to and interact with coworkers, associate with day-to-day work activity, maintain regular attendance in the workplace, and perform work activities on a consistent basis without special or additional supervision); *Sahyoun v. Saul*, No. 2:18-CV-576-EFB, 2020 WL 1492661, at *4 (E.D. Cal. Mar. 27, 2020) (rejecting argument that RFC determination that plaintiff could sustain work involving simple, repetitive tasks adequately captured moderate limitations in maintaining regular attendance, completing a normal workday or work week without interruption from a psychiatric condition, and handling normal work-related stress); *Christopher G. v. Saul*, No. 2:19-CV-06150-AFM, 2020 WL 2079972, at *6 (C.D. Cal. Apr. 30, 2020); *Flores v. Saul*, No. 1:18-CV-01523-SKO, 2020 WL 509098, at *5 (E.D. Cal. Jan. 31, 2020); *but see Messerli v. Berryhill*, No. 1:16–cv–00800–SKO, 2017 WL 3782986, at *11 (E.D. Cal. Aug. 31, 2017) (finding limitation to "simple repetitive tasks" accounted for moderate limitations in ability to accept instructions, interact with coworkers and the public, maintain attendance, complete a normal workday/workweek without interruptions, and moderate to serious limitations in her ability to deal with work stress); *Calisti v. Colvin*, 2015 WL 7428724, at * 7 (E.D. Cal. Nov. 23, 2015); *Schmidt v. Colvin*, No. 2:12-cv-00016-KJN, 2013 WL 5372845, at *17 (E.D. Cal. Sept. 25, 2013).

The district court case law in support of Defendant's position is sparser and more outdated. The weight of the more recent case law tends to refute the notion that a limitation to simple/routine

tasks with limited public contact adequately accounts for other limitations in social interaction,[4] maintaining attendance, completing a normal workday without interruptions from a psychiatric condition, and handling work related stressors. Because the ALJ neither accounted for these restrictions nor rejected them, the ALJ erred.

Finally, Defendant argues that any error with respect to the social interaction limitations was harmless because the VE identified unskilled jobs someone with Plaintiff's RFC could perform, and "unskilled work does not require working with people." Resp. at 9 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 201.00(I), 202.00(g)). Defendant's harmless error analysis misses the mark for three reasons.

First, it only addresses the ALJ's omission of social interaction limitations, not the other limitations identified by Dr. Stafford.

Secondly, it is far from axiomatic that "unskilled work does not require working with people." The regulation Defendant cites does not directly support that proposition. Rather, it provides that "*most* unskilled occupations involving working with things (rather than with data or people)," not that no unskilled jobs require working with people. *Id.* (emphasis added).[5] Indeed, SSR 85-15 tends to support the opposite proposition as it provides that the "basis mental demands of . . . unskilled work include the abilities to . . . respond appropriately to supervision, coworkers .

---

[4] Although the ALJ included a restriction to limited public contact, many jobs that do not require public contact unavoidably require at least some superficial interaction with peers and supervisors. To that end, ALJs routinely account for each distinct social restriction, which suggests they may not be interchangeable with each other, much less interchangeable with the limitation to simple/routine tasks. *See, e.g., Naddour v. Colvin*, No. 13-CV-1407-BAS WVG, 2014 WL 4724687, at *8 (S.D. Cal. Sept. 23, 2014) ("The ALJ also limited this hypothetical individual to simple, repetitive, non-public tasks with limited contact with peers and supervisors.").

[5] Defendant also cites the regulation in question somewhat out of context, as it does not address the extent to which social interaction is a basic demand of unskilled work. Rather, it is a grid rule addressing the extent to which illiteracy, education, and work experience limit the vocational scope for unskilled work. The observation in the regulation that most unskilled work involves working with things (rather than data or people) seems to be a parenthetical observation made in passing.

. ."

Moreover, as this Court has previously observed, "The Social Security regulations treat the abilities to respond appropriately to 'supervision' and to get along with 'coworkers' as aspects of the 'basic mental demands' of unskilled work, noting that the 'substantial loss of ability to meet' any basic mental demand could 'severely limit the potential occupational base.'"). *See Flores*, 2020 WL 509098, at *6.

Thirdly, although the DOT descriptions of the unskilled jobs at issue here suggest they may not require social interaction,[6] that is not an issue that the Court can independently resolve for the first time on appeal. It was an issue for the VE to resolve at the administrative hearing in response to a hypothetical containing all limitations supported by the record. *See Alexander v. Saul*, 817 F. App'x 401, 404 (9th Cir. 2020) ("If the hypothetical does not reflect all the claimant's limitations, . . . the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."). Thus, the error was not harmless as it is not clear from the record whether the inclusion of the social interaction limitations in the RFC would have eliminated the available jobs. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (noting that an error is harmless when it is "clear from the record" that the error was "inconsequential to the ultimate non-disability determination).

    **B.**   **Tami Ashley's Third-Party Function Report**

      **1.**   **Applicable Law**

Unlike the opinions of treating physicians, lay witness statements are not entitled to special

---

[6] *See* DOT 222.687-014 ("Garment Sorter . . . Sorts finished garments, such as shirts, dresses, and pajamas, according to lot and size numbers recorded on tags and labels attached to garments. May fold and package garments in boxes and bags. May iron garments prior to folding . . ."); *but see* DOT 706.684.022 ("Small Products Assembler . . . Frequently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker.").

weight. An ALJ may reject lay witness testimony by giving "reasons germane to each witness for doing so." *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded by regulation on other grounds*; *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010). In doing so, the ALJ "should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Wilson v. Berryhill*, No. 17-CV-05385-PJH, 2018 WL 6421874, at *12 (N.D. Cal. Dec. 6, 2018). Germane reasons must also be specific. *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

## 2.  **Analysis**

Plaintiff's friend, Tami Ashley, completed a third-party function report on December 30, 2016. She had known Plaintiff for twenty years. AR 195. She described the assistance he requires with things like shopping and cleaning, she described his struggles with anxiety, and she opined that he would be unable to work due to inability to focus, handle job stress, or follow directions. AR 195–202.

The ALJ rejected the lay witness statement for the following reasons:

> The statements made by Ms. Ashley have not been given under oath. She is not a medical professional and as a lay witness Ms. Ashley is not competent to make a diagnosis or argue the severity of the claimant's symptoms in relationship to his ability to work. *Most important, the clinical and diagnostic medical evidence that is discussed more thoroughly above does not support her statements. The undersigned finds Ms. Ashley's statements are not consistent with the evidence of record.*

AR 16 (emphasis added).

The first of the reasons offered by the ALJ are not germane.[7] The form requires no signature

---

[7] It's worth noting at the outset that the document in question is the SSA's Third-Party Function Report (form number SSA-3380-BK) which contains pre-printed questions, and which the claimant is instructed to "give to a friend or relative who knows you well." AR 202.

14

or affirmation of truth, yet the agency still requests the form to be completed. The form does not purport to be a statement from a medical professional, does not ask questions that require medical training to answer, and does not ask the witness to render a diagnosis. Although a comparatively lower standard applies to the evaluation of Ms. Ashley's statements than would apply to an opinion from a medical source, her lack of medical training is not a germane reason to reject her statements. *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). The ALJ is also incorrect that Ms. Ashley is incompetent to "argue the severity of the claimant's symptoms in relationship to his ability to work," as that is in fact what question number eight asks the witness to do. *See* AR 195 ("How does this person's illness, injuries, or conditions *limit his/her ability to work*?") (emphasis added). In short, the first two reasons provided by the ALJ are inapposite where, as here, the lay witness simply completed all relevant fields of a pre-printed SSA form.

Nevertheless, the ALJ provided a final reason for rejecting Ms. Ashley's statement (the only germane reason), namely that "the clinical and diagnostic medical evidence that is discussed more thoroughly above does not support her statements." AR 16.

Earlier in the ALJ's decision he explained his reasoning for rejecting Plaintiff's testimony concerning the intensity, persistence and limiting effects of his symptoms. This reasoning included: conservative treatment; stable medical findings; consistently normal mental status examinations despite anxious mood; positive response to medication with symptom improvement; the claimant's anxiety was described as stable. AR 15.

The ALJ then provided specifics to flesh out these more general concepts, supported by citations to the record, including: 1) normal mental status examination with good insight and judgment in March 2017 after medication adjustment; 2) improved self-reported anxiety in April 2017 despite continued agoraphobia; 3) August 2017 progress notes showing continued improvement; 4) progress notes in September 2017 indicating his anxiety was stable; 5) normal

mental status examination in October 2018 though he was unhappy with medication changes; 6) stable with a normal mental status in January 2018 following another medication change; 7) he reported doing well with no panic attacks as of March 2018; and 8) he continued to be stable as of October 2018. AR 15–16.  Inconsistency with medical evidence is a germane reason to reject a lay witness statement.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); 20 C.F.R. § 416.929(c)(3)(i).

Plaintiff does not take issue with the accuracy or completeness of the ALJ's recitation of his mental health treatment history, or the inferences the ALJ derived therefrom when rejecting Plaintiff's self-reported symptomology.  Rather, Plaintiff contends the ALJ could not simply incorporate by reference his earlier explanation, or his string citations to the medical record, when subsequently rejecting Ms. Ashley's lay witness statement.  Plaintiff contends the ALJ needed to underscore specific examples and "tie these findings back to specific opinions from Ms. Ashley." Reply at 3.

Plaintiff's argument runs contrary to Ninth Circuit precedent which holds that an ALJ need not provide separate reasoning for rejecting a third-party witness statement when the ALJ already provided sufficient reasoning for rejecting the claimant's own similar statements.  *See, Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

To the extent Plaintiff believes the third-party function report contained statements on novel issues not adequately addressed by the ALJ's broader analysis of Plaintiff's subjective symptomology, and that Ms. Ashley's statements would have required material changes to the RFC if credited as true, Plaintiff did not explain as much.  As such, his argument falls short.  *See*

*Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review.") (citation omitted); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) ("The claimant carries the initial burden of proving a disability.") (citation omitted).

The ALJ appropriately re-incorporated his earlier discussion by reference when rejecting Ms. Ashley's lay witness statement even though the ALJ offered additional irrelevant reasoning for doing so.

### VI.     Conclusion and Remand for Further Proceedings

Remand is appropriate for the ALJ to properly address the moderate limitations Dr. Stafford identified regarding social interaction, handling work related stressors, maintaining attendance and completing a normal workday without interruptions from a psychiatric condition.  *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Generally when a court . . . reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

### VII.    Order

The Court finds that substantial evidence and applicable law do not support the ALJ's conclusion.  Accordingly, it is ordered that the Commissioner's decision is reversed, and this matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.  The Clerk of Court is directed to enter judgment in favor of Plaintiff Daniel Lee Harrell and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **September 24, 2021**                    **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE